[Cite as *State v. Howze*, 2013-Ohio-4800.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State of Ohio, | : | |
| Plaintiff-Appellee, | : | Nos. 13AP-386<br>(C.P.C. No. 11CR-11-5831) |
| v. | : | 13AP-387<br>(C.P.C. No. 12CR-03-1183) |
| Corey J. Howze, Sr., | : | (REGULAR CALENDAR) |
| Defendant-Appellant. | : | |

---

D E C I S I O N

Rendered on October 31, 2013

---

*Ron O'Brien*, Prosecuting Attorney, and *Sheryl L. Pritchard*, for appellee.

*Todd W. Barstow & Associates*, and *Todd W. Barstow*, for appellant.

---

APPEALS from the Franklin County Court of Common Pleas.

BROWN, J.

{¶ 1} Corey J. Howze, Sr., defendant-appellant, appeals the judgment of the Franklin County Court of Common Pleas in case No. 11CR-5831, in which the court found him guilty, pursuant to a jury trial, of robbery, a violation of R.C. 2911.02, a second-degree felony. He also appeals the judgment of the court in case No. 12CR-1183, in which the court found him guilty, pursuant to a bench trial, of having a weapon while under disability, which is a violation of R.C. 2923.13, a third-degree felony, and a one-year firearm specification. Appellant has also filed a motion for the statutory jurisdictional document pursuant to the Ohio Constitution.

{¶ 2}   C.R., the victim in this case, and appellant gave conflicting versions of the events. C.R.'s testimony at trial was as follows. On October 23, 2012, appellant and his girlfriend, Alicia Hawkins, contacted C.R. at her home. Appellant, C.R., and C.R.'s former boyfriend, Teddy McClung, who was in jail, were friends. Appellant told C.R. he was going to give her $50 to help support her and McClung's three children, which appellant had done in the past. C.R. drove to appellant's home that night. Appellant and Hawkins lead C.R. around the backyard, and they directly entered the basement. About 15 minutes later, appellant started hitting C.R. in the face and mouth, and Hawkins started pulling her hair. They told her they were hitting her because she would not help get McClung out of jail and she was dating another man. Appellant then stripped C.R. of all of her clothes, Hawkins took her purse, appellant put his fingers in C.R.'s vagina, and appellant told her he was going to make her a prostitute to pay for McClung's bond. They then took Polaroid photographs of her naked on the floor. Appellant and Hawkins then left appellant naked and locked in the basement for 24 hours. At some point during the 24 hours, appellant brought down crack cocaine and made C.R. smoke it so he could tell the police she was a "crackheaded whore" if she reported the events. He put a gun to her head, and she smoked the crack. Appellant and a male relative "Bud" also came down to the basement and appellant forced her to perform oral sex on Bud. An unidentified older man eventually threw C.R.'s clothes and keys into the basement and told her to leave. He did not return her purse or two cell phones. C.R. drove to a gas station, called her boyfriend, and he took her to the hospital. She had black eyes, a bruised lip and chest, and hair pulled from her head. There was testimony at trial that the police went to appellant's home and found clumps of C.R.'s hair in the basement and a shotgun in the attic with appellant's fingerprints on it, and C.R. testified that she had witnessed McClung sell the shotgun to appellant that summer.

{¶ 3}   At trial, appellant's statement to police was played, and his version of the events was as follows. Appellant told police that C.R. came over to the house to get some pain pills to sell to help raise bond money for McClung, but then Hawkins attacked C.R. in the basement because Hawkins does not like C.R. He said they were punching and pulling each other's hair. Hawkins took C.R.'s clothes off so C.R. could not run away. After appellant broke up the fight, he took C.R. upstairs, and Hawkins began to argue with her

again. Appellant broke up the fight and told C.R. she should stay the night at the house because she was injured. Hawkins said she wanted C.R. to prostitute herself to get money for McClung's bond, but appellant refused to go along with the idea. Although Hawkins had taken C.R.'s purse, appellant retrieved C.R.'s wallet and cell phones for her. When asked why police found a notebook in his home with C.R.'s and her kids' social security numbers and personal information written in it, appellant said he wrote the information at C.R.'s urging so C.R. could assure them she would not call the police. Appellant said the shotgun in the attic was his brother's, his brother bought it from C.R., and his brother's boyfriend was supposed to take it from the home. Appellant denied that he held C.R. against her will and sexually molested her. He said Hawkins must have digitally penetrated C.R. to check her for herpes to determine if she currently had an outbreak so C.R. could prostitute herself. He said that his brother, his brother's boyfriend, and Hawkins smoke crack, but he never gave crack to C.R. or forced her to smoke it by putting a gun to her head.

{¶ 4} Cordalyn Howze, appellant's sister, testified that she saw C.R. at appellant's home in the late afternoon/early evening on October 24, 2012, and C.R. was not injured. She said she was later told that Hawkins beat up C.R. after Cordalyn left the house.

{¶ 5} Javon Howze, appellant's brother, testified that the shotgun in the attic was his. He also said that, in the afternoon of October 24, 2012, C.R. was not injured when he saw her. He said he was at the house the entire day on October 23 and 24, 2012, and he heard no fighting or hitting.

{¶ 6} Appellant was indicted in case No. 11CR-5831 on two counts of kidnapping with repeat violent offender specifications, one count of rape with repeat violent offender and sexually violent offender specifications, and two counts of robbery. Appellant was indicted in case No. 12CR-1183 on one count of having a weapon while under disability with a firearm specification.

{¶ 7} Appellant waived his right to a jury trial in case No. 12CR-1183. On April 2, 2013, a jury trial commenced in case No. 11CR-5831. Prior to trial, the state dismissed one of the kidnapping counts. The jury found appellant guilty on one robbery count, not guilty on one robbery count, and not guilty on the rape count. The jury did not reach a verdict on the kidnapping charge, and the court declared a mistrial as to that count. On April 9,

2013, the trial court found appellant guilty of having a weapon while under disability and the specification in case No. 12CR-1183. On the same date, the trial court held a sentencing hearing and imposed a term of incarceration of seven years on the robbery charge and one year on the having a weapon while under disability charge, plus one year for the firearm specification for a total sentence of nine years. On April 11, 2013, the trial court filed its judgment entries. Appellant appeals the judgments, asserting the following assignments of error:

> I. THE TRIAL COURT ERRED AND DEPRIVED APPELLANT OF DUE PROCESS OF LAW AS GUARANTEED BY THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION AND ARTICLE ONE SECTION TEN OF THE OHIO CONSTITUTION BY FINDING HIM GUILTY OF ROBBERY AND HAVING WEAPONS UNDER DISABILITY AS THOSE VERDICTS WERE NOT SUPPORTED BY SUFFICIENT EVIDENCE AND WERE ALSO AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
>
> II. THE TRIAL COURT ERRED TO THE PREJUDICE OF APPELLANT BY IMPROPERLY SENTENCING HIM TO CONSECUTIVE TERMS OF INCARCERATION IN CONTRAVENTION OF OHIO'S SENTENCING STATUTES.

{¶ 8} Appellant argues in his first assignment of error that the trial court's judgments finding him guilty of robbery and having a weapon while under disability were not supported by sufficient evidence and were against the manifest weight of the evidence. This court's function when reviewing the weight of the evidence is to determine whether the greater amount of credible evidence supports the verdict. *State v. Thompkins*, 78 Ohio St.3d 380, 387 (1997). In order to undertake this review, we must sit as a "thirteenth juror" and review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether the trier of fact clearly lost its way and created a manifest miscarriage of justice. *Id.*, citing *State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist.1983). If we find that the fact finder clearly lost its way, we must reverse the conviction and order a new trial. *Id.* On the other hand, we will not reverse a conviction so long as the state presented substantial evidence for a reasonable

trier of fact to conclude that all of the essential elements of the offense were established beyond a reasonable doubt. *State v. Getsy*, 84 Ohio St.3d 180, 193-94 (1998).

{¶ 9} The weight of the evidence concerns the inclination of the greater amount of credible evidence offered to support one side of the issue rather than the other. *Thompkins* at 387. When presented with a challenge to the manifest weight of the evidence, an appellate court may not merely substitute its view for that of the trier of fact, but must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *Id.* An appellate court should reserve reversal of a conviction as being against the manifest weight of the evidence for only the most " 'exceptional case in which the evidence weighs heavily against the conviction.' " *Id.*, quoting *Martin* at 175; *State v. Strider-Williams*, 10th Dist. No. 10AP-334, 2010-Ohio-6179, ¶ 12.

{¶ 10} Although sufficiency and manifest weight are different legal concepts, manifest weight may subsume sufficiency in conducting the analysis; that is, a finding that a conviction is supported by the manifest weight of the evidence necessarily includes a finding of sufficiency. *State v. McCrary*, 10th Dist. No. 10AP-881, 2011-Ohio-3161, ¶ 11, citing *State v. Braxton*, 10th Dist. No. 04AP-725, 2005-Ohio-2198, ¶ 15. "[T]hus, a determination that a conviction is supported by the weight of the evidence will also be dispositive of the issue of sufficiency." *Id.* In that regard, we first examine whether appellant's conviction is supported by the manifest weight of the evidence. *State v. Gravely*, 188 Ohio App.3d 825, 2010-Ohio-3379, ¶ 46 (10th Dist.).

{¶ 11} R.C. 2911.02 provides, in pertinent part:

> (A) No person, in attempting or committing a theft offense or in fleeing immediately after the attempt or offense, shall do any of the following:
>
> * * *
>
> (2) Inflict, attempt to inflict, or threaten to inflict physical harm on another.

{¶ 12} R.C. 2923.13 provides, in pertinent part

(A) Unless relieved from disability as provided in section 2923.14 of the Revised Code, no person shall knowingly acquire, have, carry, or use any firearm or dangerous ordnance, if any of the following apply:

* * *

(2) The person is under indictment for or has been convicted of any felony offense of violence or has been adjudicated a delinquent child for the commission of an offense that, if committed by an adult, would have been a felony offense of violence.

{¶ 13} Appellant's argument is that C.R.'s testimony was not credible. Appellant points out that C.R. was an admitted drug abuser, it is apparent the jury had difficulty believing her based upon its acquittal on the rape count and hung jury on the kidnapping count, C.R.'s testimony bordered on the fantastic, appellant never attempted to follow through on the supposed plan to force her into prostitution to pay McClung's bail, and appellant released her without obtaining any bail money they allegedly sought. Appellant contends that his testimony, along with his brother's and sister's testimony, makes more sense. Appellant and appellant's sister testified that the fight was between C.R. and appellant's girlfriend, and appellant's brother testified he did not see any fight during the two days in question. Appellant also points out how "convenient" it was that C.R. was able to witness the transaction between appellant and McClung concerning the shotgun police found in appellant's attic.

{¶ 14} Appellant's entire argument is based upon witness credibility. As explained above, witness credibility is within the providence of the jury or fact finder. Appellant gives the court no reason to disbelieve C.R.'s testimony, except that his testimony makes more sense. Apparently, the jury (in the jury trial on the robbery charge) and the judge (in the bench trial on the having a weapon under disability charge) chose to believe, at least most of, C.R.'s testimony. A review of the record demonstrates that C.R.'s testimony regarding the robbery was corroborated in many respects. C.R. testified that both appellant and Hawkins beat her, and the photographs and hospital records submitted at trial showed that C.R. had injuries consistent with a physical assault. Appellant also

admitted to the police detective that C.R. was beaten, albeit he blamed it on Hawkins. Clumps of C.R.'s hair were found in appellant's basement, consistent with C.R.'s testimony that her hair was pulled out. C.R. also testified that appellant took her purse and cell phones and recorded her license number and social security number. Police found a notebook at appellant's house, and appellant admitted he recorded the information in it. C.R. also testified that she was stripped naked and locked in the basement. Appellant admitted that C.R. was stripped of her clothing but again blamed it on Hawkins. There was also a photograph that depicted locks on the basement door. The jury believed C.R.'s testimony, and we find no reason to disturb that determination. Therefore, we find the verdict was not against the manifest weight of the evidence and, thus, was also based upon sufficient evidence.

{¶ 15} With regard to the having a weapon while under disability charge, the trial court also chose to believe C.R., and there was other evidence corroborating some of her testimony. C.R. testified that she felt a metal barrel of a gun against the back of her head and heard the gun click. She said that she witnessed McClung sell appellant a shotgun. Corroborating C.R.'s testimony, in this respect, was that the shotgun confiscated from appellant's home was operable and had appellant's fingerprints on it. Based upon this evidence, we find the trial court's verdict on the having a weapon while under disability charge was not against the manifest weight of the evidence and, thus, also based upon sufficient evidence. Therefore, appellant's first assignment of error is overruled.

{¶ 16} Appellant argues in his second assignment of error that the trial court erred when it improperly sentenced him to consecutive terms of incarceration. The trial court sentenced appellant to consecutive terms of imprisonment on the robbery and having a weapon while under disability convictions. Appellant contends that, because his consecutive sentences were non-mandatory, R.C. 2929.14(C)(4) required the trial court to state a factual basis for sentencing him to consecutive terms. Appellant points out that, although the trial court's judgments state that it weighed the factors set forth in R.C. 2929.14, it failed to make the statutory findings on the record at the sentencing hearing.

{¶ 17} R.C. 2929.14(C)(4) provides:

> If multiple prison terms are imposed on an offender for convictions of multiple offenses, the court may require the

offender to serve the prison terms consecutively if the court finds that the consecutive service is necessary to protect the public from future crime or to punish the offender and that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public, and if the court also finds any of the following:

(a) The offender committed one or more of the multiple offenses while the offender was awaiting trial or sentencing, was under a sanction imposed pursuant to section 2929.16, 2929.17, or 2929.18 of the Revised Code, or was under post-release control for a prior offense.

(b) At least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the multiple offenses so committed was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct.

(c) The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender.

{¶ 18} House Bill No. 86 ("H.B. 86") became effective September 30, 2011. The enactment of H.B. 86 "revived the language in R.C. 2929.14(E)(4) regarding consecutive sentences and codified it as R.C. 2929.14(C)(4)." *State v. Wilson*, 10th Dist. No. 12AP-551, 2013-Ohio-1520, ¶ 12. The revisions to the felony sentencing statutes under H.B. 86 "now require a trial court to make specific findings on the record, as set forth in R.C. 2929.14(C)(4), when imposing consecutive sentences." *State v. Peddicord*, 3d Dist. No. 7-12-24, 2013-Ohio-3398, ¶ 33. Specifically, R.C. 2929.14(C)(4) now requires the trial court to make the following three findings before imposing consecutive sentences: "(1) that consecutive sentences are necessary to protect the public from the future crime or to punish the offender; (2) that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public; and (3) that one of the subsections (a), (b), or (c) apply." *State v. Hubbard*, 10th Dist. No. 11AP-945, 2013-Ohio-2735, ¶ 86. A trial court "is not required to give reasons explaining these findings, nor is the court required to recite any 'magic' or 'talismanic' words when

imposing consecutive sentences," but "the record must reflect that the court made the findings required by the statute." *Id.*

{¶ 19} In the present case, the trial court stated during the sentencing hearing:

> The Court notices two things. One, the Court notes that the defendant is 35 years old and his first conviction took place in 2007 or 2008. That was the rape case in front of Judge Bessey. And then we had this case here.
>
> So the defendant, for much of his adult life, had led a conviction free existence. The Court does find, though, that this is one of the worst forms of the offense and tempers that only with regards to the defendant's lack of convictions until he roughly reached the age of 30. However, the Court is concerned that we've had two significant felonies and the third, weapon under disability, is not as severe, clearly, as the robbery or, of course, the prior rape.

{¶ 20} We agree with appellant that the trial court did not make the necessary findings under R.C. 2929.14(C)(4). The court's failure to make the statutory findings requires us to vacate appellant's sentence and remand for resentencing. *See Hubbard* at ¶ 87 (finding that because the trial court failed to comply with R.C. 2929.14(C)(4) by failing to make any of the required findings on the record before imposing consecutive sentences, it must vacate defendant's sentence and remand the case for resentencing).

{¶ 21} The state points out that appellant did not raise this issue before the trial court and requests that we find no plain error resulting from the trial court's failure to make the necessary statutory findings. This argument, however, has been previously addressed and rejected by this court. *See Wilson* at ¶ 18 ("Because the record demonstrates that the trial court failed to make the findings required by R.C. 2929.14(C)(4) before imposing consecutive sentences on appellant's multiple offenses, appellant's sentence is contrary to law and constitutes plain error."); *State v. Bender*, 10th Dist. No. 12AP-934, 2013-Ohio-2777, ¶ 7 (noting, in response to state's argument that plain error standard should be applied to court's failure to comply with R.C. 2929.14(C)(4), "[o]ur recent cases indicate a tendency of this court to view a failure to precisely comply with R.C. 2929.14 as plain error as a matter of law"); *State v. Bailey*, 10th Dist. No. 12AP-699, 2013-Ohio-3596, ¶ 46 ("Failure to fully comply with R.C.

2929.14(C)(4) is plain error as a matter of law."). For these reasons, appellant's second assignment of error is sustained.

{¶ 22} Accordingly, appellant's first assignment of error is overruled, his second assignment of error is sustained, the judgments of the Franklin County Court of Common Pleas are affirmed in part and reversed in part, and these matters are remanded to that court for resentencing in accordance with the law and this decision. We also deny appellant's motion for the statutory jurisdictional document pursuant to the Ohio Constitution.

*Judgments affirmed in part and reversed in part; causes remanded.*

O'GRADY and McCORMAC, JJ., concur.

McCORMAC, J., retired of the Tenth Appellate District, assigned to active duty under authority of the Ohio Constitution, Article IV, Section 6(C).

_____