[Cite as *In re H.F.*, 2016-Ohio-580.]

# IN THE COURT OF APPEALS OF OHIO

## TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| In re | : | |
| [H.F.], | : | No. 15AP-705 |
| | | (C.P.C. No. 13JU-332) |
| [T.F., | : | |
| | | (REGULAR CALENDAR) |
| Appellant]. | : | |
| | : | |
| In re | : | |
| | : | |
| [J.S.] et al., | | No. 15AP-706 |
| | : | (C.P.C. No. 13JU-336) |
| [T.F., | | |
| | : | (REGULAR CALENDAR) |
| Appellant]. | | |
| | : | |

---

# D E C I S I O N

### Rendered on February 18, 2016

---

*Robert J. McClaren*, for appellee, Franklin County Children Services.

*Yeura R. Venters*, Public Defender, and *John W. Keeling*, for appellant.

---

APPEALS from the Franklin County Court of Common Pleas, Division of Domestic Relations, Juvenile Branch

BROWN, J.

{¶ 1} T.F. ("mother"), appellant, appeals two judgments of the Franklin County Court of Common Pleas, Division of Domestic Relations, Juvenile Branch, in which the court granted the motions for permanent court commitment ("PCC") filed by Franklin County Children Services ("FCCS"), appellee.

{¶ 2}    Mother has three sons, H.F, Ja.S., and Jo.S. At the time of the PCC hearing, H.F. was 6 years old, Jo.S. was 10 years old, and Ja.S. was 11 years old. The father of Jo.S. and Ja.S. is deceased, and the whereabouts of H.F.'s father is unknown. On January 2, 2013, mother signed a 30-day voluntary custody agreement in which she surrendered the three children to FCCS after their house caught on fire on December 28, 2012. The house fire was caused by H.F. playing with a lighter. Mother and the three children had a history of involvement with FCCS since 2008 based on mother's drug use and mental health issues. On January 17, 2013, the trial court awarded temporary custody to FCCS. On March 7, 2013, the trial court found the children to be dependent as of February 28, 2013.

{¶ 3}    Pursuant to mother's case plan, mother was to obtain housing, undergo drug assessments, complete drug screens and treatment, attend drug court, obtain a mental health assessment, and undergo any recommended mental health treatment. Although mother participated fully in scheduled visitations with the children, she continued to use marijuana, cocaine, and heroin; failed to obtain suitable housing; and failed to complete drug and alcohol treatment.

{¶ 4}    On December 13, 2013, FCCS filed motions for PCC in the respective cases, one relating to H.F., and one relating to Ja.S. and Jo.S. On several dates in March and May 2015, the trial court held hearings on FCCS's motions for PCC. On June 26, 2015, the trial court entered two essentially identical judgment entries, in which the court granted FCCS's motions for PCC. Mother appeals the judgments of the trial court, asserting the following assignments of error:

> [I.] THE TRIAL COURT ERRED WHEN IT FOUND THAT THE CHILDREN COULD NOT BE PLACED WITH THEIR NATURAL MOTHER WITHIN A REASONABLE TIME AND THAT IT WAS IN THE BEST INTERESTS OF THE CHILDREN TO BE PERMANENTLY COMMITTED TO THE CUSTODY OF FRANKLIN COUNTY CHILDREN SERVICES.

> [II.] THE TRIAL COURT ERRED WHEN IT DETERMINED THAT IT WAS IN THE BEST INTEREST TO GRANT PERMANENT CUSTODY OF THE YOUNGEST CHILD WHEN THERE WAS NO EVIDENCE THAT AN ADOPTION WAS IMMINENT OR LIKELY.

{¶ 5}    Mother argues in her first assignment of error that the trial court erred when it found that the children could not be placed with her within a reasonable time and

that it was in the best interest of the children to be permanently committed to the custody of FCCS. R.C. 2151.414 governs the procedure for granting permanent custody of a child to an agency such as FCCS. Under R.C. 2151.414(B)(1), a trial court may grant permanent custody to an agency if the court determines by clear and convincing evidence that: (1) it is in the best interest of the child, and (2) one of the situations set forth in R.C. 2151.414(B)(1)(a) through (d) applies. Clear and convincing evidence is that measure or degree of proof which is more than a mere preponderance of the evidence, but not to the extent of such certainty as is required beyond a reasonable doubt in criminal cases, and that will produce in the mind of the trier of fact a firm belief or conviction as to the facts sought to be established. *In re K.H.*, 119 Ohio St.3d 538, 2008-Ohio-4825, ¶ 42, citing *Cross v. Ledford*, 161 Ohio St. 469 (1954), paragraph three of the syllabus.

{¶ 6} In determining whether the trial court's ruling on the permanent custody motion is against the manifest weight of the evidence, we must consider whether the evidence on each element of the agency's case satisfied or failed to satisfy the burden of persuasion, i.e., whether clear and convincing evidence supports each element. *See Sparre v. Ohio Dept. of Transp.*, 10th Dist. No. 12AP-381, 2013-Ohio-4153, ¶ 11, citing *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, ¶ 19. A judgment supported by some competent, credible evidence going to all the essential elements of the case will not be reversed by a reviewing court as being against the manifest weight of the evidence. *Id.* at ¶ 10, quoting *C.E. Morris Co. v. Foley Constr. Co.*, 54 Ohio St.2d 279 (1978), syllabus. " 'The phrase "some competent, credible evidence" * * * presupposes evidentiary weighing by an appellate court to determine whether the evidence *is* competent and credible.' " (Emphasis sic.) *Id.*, quoting *Eastley* at ¶ 15.

{¶ 7} " 'Weight of the evidence concerns "the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other. * * * Weight is not a question of mathematics, but depends on [the evidence's] effect in inducing belief." ' " (Emphasis omitted.) *Eastley* at ¶ 12, quoting *State v. Thompkins*, 78 Ohio St.3d 380, 387 (1997), quoting *Black's Law Dictionary* 1594 (6th Ed.1990). "Thus, in reviewing a judgment under the manifest-weight standard, a court of appeals weighs the evidence and all reasonable inferences, considers the credibility of witnesses, and determines whether in resolving conflicts in the evidence, the finder of fact clearly lost its way." *Sparre* at ¶ 10, citing *Eastley* at ¶ 20.

{¶ 8}   "In undertaking this limited reweighing of the evidence, however, we are guided by the presumption that the factual findings of the trial court were correct." *Sparre* at ¶ 12. "Accordingly, the weight to be given the evidence and the credibility of the witnesses are primarily questions to be answered by the trier of fact." *Id.*, citing *State v. DeHass*, 10 Ohio St.2d 230 (1967), paragraph one of the syllabus. The rationale for this deference is the trier of fact is in the best position to view witnesses and observe their demeanor, voice inflections, and gestures. *Seasons Coal Co., Inc. v. Cleveland*, 10 Ohio St.3d 77, 80 (1984). Moreover, though sufficiency and manifest weight are different legal concepts, a finding that a judgment is supported by the manifest weight of the evidence necessarily includes a finding that sufficient evidence supports the judgment. *See State v. Howze*, 10th Dist. No. 13AP-386, 2013-Ohio-4800, ¶ 10.

{¶ 9}   With regard to a finding that one of the situations set forth in R.C. 2151.414(B)(1)(a) through (d) applies, in the present case, the trial court relied on R.C. 2151.414(B)(1)(a), which provides, in pertinent part, that the court may grant custody of a child to FCCS if the court determines that "[t]he child is not abandoned or orphaned," does not meet the "twelve out of twenty-two" rule "and the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents." In determining whether the children could be placed with mother within a reasonable time or should not be placed with mother, the trial court was required to find at least 1 of the 16 factors in R.C. 2151.414(E)(1) through (16) existed. The trial court here found the following factors existed:

> (1) Following the placement of the child outside the child's home and notwithstanding reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that initially caused the child to be placed outside the home, the parent has failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the child's home. In determining whether the parents have substantially remedied those conditions, the court shall consider parental utilization of medical, psychiatric, psychological, and other social and rehabilitative services and material resources that were made available to the parents for the purpose of changing parental conduct to allow them to resume and maintain parental duties.

(2) Chronic mental illness, chronic emotional illness, mental retardation, physical disability, or chemical dependency of the parent that is so severe that it makes the parent unable to provide an adequate permanent home for the child at the present time and, as anticipated, within one year after the court holds the hearing pursuant to division (A) of this section or for the purposes of division (A)(4) of section 2151.353 of the Revised Code;

* * *

(4) The parent has demonstrated a lack of commitment toward the child by failing to regularly support, visit, or communicate with the child when able to do so, or by other actions showing an unwillingness to provide an adequate permanent home for the child;

* * *

(9) The parent has placed the child at substantial risk of harm two or more times due to alcohol or drug abuse and has rejected treatment two or more times or refused to participate in further treatment two or more times after a case plan issued pursuant to section 2151.412 of the Revised Code requiring treatment of the parent was journalized as part of a dispositional order issued with respect to the child or an order was issued by any other court requiring treatment of the parent.

* * *

(14) The parent for any reason is unwilling to provide food, clothing, shelter, and other basic necessities for the child or to prevent the child from suffering physical, emotional, or sexual abuse or physical, emotional, or mental neglect.

* * *

(16) Any other factor the court considers relevant.

{¶ 10} With regard to R.C. 2151.414(E)(1), the trial court found that mother failed to remedy the problems of drug addiction and inadequate supervision of the children as a result of her dual diagnosis-AOD (alcohol and other drug)-Bi-polar; she refused to complete AOD and mental health evaluations and recommended treatment; and she did not utilize the psychological services, parenting classes, individual counseling, family

counseling, chemical dependency services, and other social services. With regard to case planning and diligent efforts by FCCS, the trial court found that mother visited the children regularly, but visitation was chaotic, with mother yelling a lot; although mother completed a mental health evaluation, she did not complete counseling as recommended; although mother completed a chemical abuse and dependency assessment, she did not complete in-/out-patient treatment and counseling as recommended; mother completed only 9 of 170 drug screens, and screens tested positive for cocaine; mother did not establish housing; and mother's employment was not stable and was minimal since age 18.

{¶ 11} With regard to R.C. 2151.414(E)(2), the court found that mother refused to be sober and drug free and had used heroin or cocaine as recently as two weeks prior. With regard to R.C. 2151.414(E)(4), the trial court found that mother failed to demonstrate commitment to the children by failing to complete recovery treatment and refusing drug treatment. With regard to R.C. 2151.414(E)(9), the trial court found that mother had not placed the children at risk of harm but has rejected treatment two or more times after a case plan or dispositional order. With regard to R.C. 2151.414(E)(14), the trial court found that mother was unfit as a result of chronic drug use, was incapable of meeting the custodial needs of the children, and was unfit for custody.

{¶ 12} Once the trial court finds that one of the circumstances in R.C. 2151.414(B)(1)(a) through (d) applies, the trial court then must determine whether a grant of permanent custody is in the best interest of the child. R.C. 2151.414(B)(1). R.C. 2151.414(D)(1) provides that, in determining the best interest of the child, the court must consider all relevant factors, including, but not limited to, the following: (a) the interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers, out-of-home providers, and any other person who may significantly affect the child, (b) the wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child, (c) the custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for 12 or more months of a consecutive 22-month period ending on or after March 18, 1999, (d) the child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency, and

(e) whether any of the factors in divisions (E)(7) through (11) of this section apply in relation to the parents and child. The factors set forth in R.C. 2151.414(E)(7) through (11) include: (E)(7) whether the parents have been convicted of or pled guilty to various crimes, (E)(8) whether medical treatment or food has been withheld from the child, (E)(9) whether the parent has placed the child at a substantial risk of harm due to alcohol or drug abuse, (E)(10) whether the parent has abandoned the child, and (E)(11) whether the parent has had parental rights terminated with respect to a sibling of the child.

{¶ 13} In the present case, regarding R.C. 2151.414(D)(1)(a), the trial court found that the children had some bond with their mother, no bond with each other, minimal bond with their maternal grandmother, and a very good bond with their foster caregivers. With regard to R.C. 2151.414(D)(1)(b), the trial court found that H.F. wished to live with his foster parents, and Ja.S. and Jo.S. wished to live with their mother. With regard to R.C. 2151.414(D)(1)(c), the trial court found that the children lived with their mother from birth until January 19, 2013, and thereafter in foster care. With regard to R.C. 2151.414(D)(1)(d), the trial court found that the children were in need of a legally secure permanent placement, and such can only be achieved for H.F. and Jo.S. with a grant of permanent custody to FCCS. The court found that Ja.S.'s best interest may be to live with the maternal grandmother. With regard to R.C. 2151.414(D)(1)(e), the trial court found none of the factors applied to mother, except maybe R.C. 2151.414(E)(9), which the trial court found had some application as a result of mother's drug addiction and refusal of treatment.

{¶ 14} In her present appeal, mother begins by contesting the trial court's finding under R.C. 2151.414(E)(9). Mother argues that there was no evidence that mother's drug usage had ever placed the children at risk; thus, mother's drug usage could not be a determinative factor in assessing best interest. We agree that there is no evidence that mother used drugs around the children. Jo.S and Ja.S. both stated in their in camera hearing that they had never seen their mother high on drugs or alcohol. However, the record was clear that mother is a chronic drug user and her drug usage has caused problems. At the hearing, when asked about a litany of investigations involving intoxication, the snorting of pills, prostitution to obtain pills, and her abuse of crack and alcohol, mother remembered some, did not remember others, and denied some ever happened. She admitted she was investigated by FCCS in March 2008 for alcohol use.

When asked whether it was true that she was not waking up until two or three in the afternoon, and the children were running around the house without supervision, she denied such. She also said she did not remember being extremely intoxicated and belligerent with police and paramedics in May 2009. When asked whether she remembered snorting pills and prostituting to obtain pills in June 2011, she said she did not remember. Mother did remember FCCS investigating her in July 2012 for abusing crack and alcohol.

{¶ 15} Mother admitted during the hearing that, although she does not do drugs in the house, she has been using drugs since the last time she completed drug treatment in 2009 or 2010. She admitted she sometimes still uses drugs, including marijuana, heroin, and cocaine. She last used heroin two months prior to trial, and cocaine two weeks prior to trial. Mother admitted she was not currently in drug treatment and that, although she did attend drug counseling, she refused to go to in-patient treatment as recommended. She also admitted that she has tested positive with every urine screen she has taken in this case.

{¶ 16} Monica Kagey, the drug court manager for Franklin County Family Drug Court, testified that mother continuously failed to appear for appointments to get enrolled in a drug program. Kent Mitchell, the guardian ad litem, testified that his recommendation was that the motion for PCC be granted because of mother's long-standing failure to work toward sobriety and stop abusing heroin and cocaine.

{¶ 17} B.T., mother's sister, testified that mother had used drugs two or three times in the last couple of weeks prior to trial.

{¶ 18} Based on this evidence, it is clear that mother continues to use drugs and alcohol. Although there was no evidence of the direct impact that mother's drug and alcohol usage had on the children before FCCS obtained custody of them, it is clear that mother's drug and alcohol usage has caused serious problems in her life which, at worst, caused harm to the children and, at best, put the children at serious risk of potential harm. Mother failed to offer any convincing evidence that she would be able to maintain sobriety if the children were under her care. Her past history of drug and alcohol abuse, and the problems that resulted therefrom, as well as her extensive history with FCCS, are good indications of mother's future conduct. Despite knowing that she needed to become drug free in order to regain custody of her children, she failed to do so. Likewise, mother

knew she had to complete drug counseling and treatment but also failed to do so. Her dismal efforts are a telling testament to her lack of devotion to regaining custody of her children. Despite the lack of direct evidence as to the impact mother's drug and alcohol abuse caused the children prior to FCCS gaining custody, "a trial court is not required to experiment with a child's welfare in order to permit a parent to prove his or her suitability." *In re M.M.*, 4th Dist. No. 14CA6, 2014-Ohio-5111, ¶ 33.

> " '* * * [A] child should not have to endure the inevitable to its great detriment and harm in order to give the * * * [parent] an opportunity to prove her suitability. To anticipate the future, however, is at most, a difficult basis for a judicial determination. The child's present condition and environment is the subject for decision not the expected or anticipated behavior of unsuitability or unfitness of the * * * [parent]. * * * The law does not require the court to experiment with the child's welfare to see if he will suffer great detriment or harm.' "

*In re Bishop*, 36 Ohio App.3d 123, 126 (5th Dist.1987), quoting *In re East*, 32 Ohio Misc. 65, 69 (1972). In the present case, the trial court did not err when it declined to experiment with the welfare of the children by returning them to a mother who has consistently abused drugs and alcohol and refused treatment in the hopes that one day she might become sober.

{¶ 19} Mother next argues that lack of housing was the initial reason that FCCS obtained custody of the children, but the record shows that mother obtained housing, and FCCS still would not return the children to her. Mother also asserts that she had a current place to keep the children while living with her sister. Initially, we note that the original complaints in these cases also indicated that mother tested positive for cocaine at the time the case opened, and, although she initially denied using cocaine, she later admitted to it and requested help for her alcohol and other drug issues. Thus, the inclusion of drug and alcohol treatment and services in her case plan was based on the original dependency complaint, and mother's failure to obtain treatment and obtain sobriety formed a valid basis for FCCS to retain custody despite mother's claim that she had adequate housing.

{¶ 20} Notwithstanding, mother's housing was not stable, safe, and secure. At the hearing, mother testified that she lived with her sister. Her sister had a one-month old baby who lived with her full time, but she did not have full custody of four other children

because they were in the custody of FCCS (in part due to the sister's alcohol and cocaine use). The sister's judgment was also called into question during the hearing, when she testified that she believed mother was ready to regain custody of the children, despite admitting that mother had used drugs three times in the prior month and leaves for three days at a time when she uses drugs. The sister also testified that, although mother should not get her children if she were actively using, she would find it appropriate to allow mother to care for the children if she had not been high for over a week. Also, the sister herself was only eight months sober at the time of the hearing. Furthermore, the current three-bedroom home shared by mother and her sister appeared too small to reasonably accommodate the sister's five children as well as mother's three children. The sister testified that she would have to obtain three sets of bunk beds or two sets of bunk beds and a twin bed to accommodate all of the children. Although the sister testified that she was hoping to move into their father's four-bedroom rental home in the future, such had not happened as of the time of the hearing and represented only a possibility. Therefore, we disagree with mother's contention that she had obtained safe, secure housing.

{¶ 21} Mother next argues that the biggest issue was her inability to comply with counseling and drug treatment ordered by FCCS, but the focus should not be on the faults or acts of the parent but on the impact of the faults or acts on the children. Mother maintains that she is a loving and caring parent, but the trial court focused on her drug and mental health problems without considering how these faults impacted her children. Mother also maintains that the trial court paid no attention to the level of care the children received while under mother's care, and there was no evidence that mother was not properly caring for the children. However, mother's argument on this issue is completely presented in the context of a dependency determination, and the Ohio Revised Code specifically indicates that a dependency adjudication cannot be re-adjudicated at a PCC hearing. *See* R.C. 2151.414(A)(1). As for the impact of mother's drug and alcohol abuse on the children, we already addressed this issue above. For all the foregoing reasons, we find mother's arguments without merit and overrule her first assignment of error.

{¶ 22} Mother argues in her second assignment of error that the trial court erred when it found that it was in the best interest to grant PCC of H.F. to FCCS when there was no evidence that an adoption was imminent or likely. Mother argues that if there is little

chance of adoption, there is also little need to permanently terminate the parent-child relationship. She maintains that in the absence of any immediate or concrete plans for adoption, it is difficult to find that the severing of parental ties is in the best interest of the child.

{¶ 23} It is true that Tina Brown, a caseworker for Permanent Family Solutions Network, testified that H.F.'s foster parents told her they would not adopt him because of their age. However, as this court has held, "the statutes governing permanent custody simply do not require an agency to prove that adoption is likely." *In re V.B.-S.*, 10th Dist. No. 13AP-478, 2013-Ohio-5448, ¶ 51. While it "is true that the likelihood that a child will be adopted may be considered in determining the child's best interest[,] * * * the statutes contemplate that all of the statutory best-interest factors must be considered and, although the likelihood of adoption weighs in favor of such an award, the absence of that likelihood does not preclude the court from finding that an award of permanent custody is in the child's best interest." *Id.*, citing R.C. 2151.414(D)(1)(d); *In re K.L.*, 10th Dist. No. 13AP-218, 2013-Ohio-3499, ¶ 40; and *In re K.J.D.*, 10th Dist. No. 12AP-652, 2013-Ohio-610. Therefore, although we understand mother's basic sentiment of "what's the rush?," we cannot say that the trial court committed error in granting PCC to FCCS when it did not appear that an adoption of H.F. was likely. The trial court was not required to wait to see if mother was going to take the necessary steps to achieve sobriety and risk H.F.'s long-term welfare if she failed to do so. Therefore, we overrule mother's second assignment of error.

{¶ 24} Accordingly, mother's two assignments of error are overruled, and the judgments of the Franklin County Court of Common Pleas, Division of Domestic Relations, Juvenile Branch, are affirmed.

*Judgments affirmed.*

DORRIAN, P.J., and LUPER SCHUSTER, J., concur.

_____