[Cite as *In re E.-J. Children*, 2019-Ohio-1519.]

# IN THE COURT OF APPEALS

# FIRST APPELLATE DISTRICT OF OHIO

# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| IN RE: E.-J. CHILDREN | : | APPEAL NO. C-190007<br>TRIAL NO. F13-1048Z |
| | : | *O P I N I O N.* |

Appeal From: Hamilton County Juvenile Court

Judgment Appealed From Is: Affirmed in Part, Reversed in Part, and Cause
Remanded

Date of Judgment Entry on Appeal: April 24, 2019

*Christopher P. Kapsal*, for Appellant Mother,

*Joseph T. Deters*, Hamilton County Prosecuting Attorney, and *Nick Gramke*,
Assistant Prosecuting Attorney, for Appellee Hamilton County Department of Job
and Family Services,

*Raymond T. Faller*, Hamilton County Public Defender, and *Marjorie Davis*,
Assistant Public Defender, Guardian ad Litem, for I.E.-J. and C.E.

**Mock, Judge.**

{¶1}   Mother appeals the juvenile court's judgment awarding permanent custody of her two children, I.E.-J., currently age ten, and C.E., currently age three, to the Hamilton County Department of Job and Family Services ("HCJFS").  For the following reasons, we affirm the grant of permanent custody of I.E.-J. to HCJFS but reverse the award of permanent custody to HCJFS with respect to C.E.

**Factual Background**

{¶2}   HCJFS first had contact with this family in 2013, but mother has had previous involvement with child protective services in two different states.  In May 2000, the Illinois Department of Children and Family Services became involved with mother after her infant daughter died because of cosleeping with mother.  The death was ruled an accident, and a safety plan was put in place, with services offered to mother.  She refused the services, and the case was closed.

{¶3}   In January 2007, the Iowa Department of Children Services ("DHS in Iowa") removed mother's three children from her home, and eventually the Iowa Juvenile Court in Scott County terminated mother's parental rights in 2008.  The appellate court affirmed the termination of mother's parental rights, citing as the basis for its decision, mother's history of domestic violence, substance abuse, mental-health issues and her resistance to services.  In 2009, mother gave birth to I.E.-J.

{¶4}   In 2010, DHS in Iowa temporarily removed I.E.-J. from mother's care because of drugs found in the home.  I.E.-J.'s caretaker admitted to using crack cocaine.  Mother minimized the threats to I.E.-J. and refused services.  I.E.-J. was

returned to mother with orders of protective supervision. The case was closed, and eventually mother and I.E.-J. moved to Ohio.

{¶5} In April 2013, HCJFS removed I.E.-J. from mother's care after she and her boyfriend were both arrested for domestic violence. Mother allegedly chased her boyfriend with a knife in I.E.-J.'s presence. At the request of HCJFS, mother completed a diagnostic assessment, which indicated that mother had an anti-social personality disorder. No treatment was recommended, however, because this disorder is, according to experts, not amenable to treatment. HCJFS also requested random drug screens, but mother missed several appointments. Eventually, custody of I.E.-J. was remanded to mother with orders of protective supervision.

{¶6} HCJFS became involved with the family again in October 2016 when mother brought C.E., born in July 2016, to Cincinnati Children's Hospital where he was diagnosed with a catastrophic brain injury. Mother reported that she had swaddled C.E., then laid him on his back and went downstairs. When she came back upstairs, he was face down on the bed with a bloody nose. HCJFS received interim custody of both children due to the unknown cause of C.E.'s injury.

{¶7} While the children were in the interim custody of HCJFS, mother completed a second diagnostic assessment, which reaffirmed mother's diagnosis of anti-social personality disorder. In addition, during this assessment, mother reported that the night she brought C.E. to the hospital, she had a blood test, which revealed that her blood-alcohol level was .09.

{¶8} Ultimately, the children were adjudicated dependent, but were returned to mother's care, with orders of protective supervision, because the medical evidence did not indicate that mother was responsible for C.E.'s injury. In his

3

decision, the magistrate noted that the order regarding mother complying with random drug screens was made because the hospital nurses had reported mother smelled of alcohol on several occasions when she was visiting C.E.

{¶9} Beechacres Parenting Center completed a mental-health assessment on I.E.-J. in 2016. At that time, I.E.-J. was living with mother, and mother reported that I.E.-J. had been "kicked out" of a summer camp for "hitting" and another camp for "throwing things." Mother reported that I.E.-J. wrote "DIE" on the toilet at home, put a hole in the wall, and would kick things out of anger. Previously, mother had I.E.-J. enrolled in a school program that specifically helped children with behavior issues. Mother reported that I.E.-J. did not listen to her, wandered off, cried often, lied and tried to steal things. Mother mentioned that I.E.-J. would steal things to give to other children to seek attention.

{¶10} I.E.-J. was diagnosed with oppositional defiant disorder, and it was indicated that the "the frequency of these symptoms are all of the time and they are impacting [I.E.-J.'s] functioning in a home and school setting." I.E.-J. was also diagnosed with post-traumatic stress disorder, evidenced by her nightmares, crying and struggling with boundaries. The trauma underlying her stress was identified as I.E.-J.'s repeated removal from mother's care.

{¶11} In October 2017, HCJFS moved for interim and permanent custody of the children. With respect to C.E., HCJFS indicated in its complaint that C.E. had been ready for discharge from the hospital since July 2017, but mother refused to give her consent to transfer C.E. to a long-term-care facility. HCJFS also noted that C.E.'s father had no contact with him. With respect to I.E.-J., HCJFS indicated that mother had missed most of her urine screens, and of the two screens taken by that

time, one was "abnormal." The juvenile court magistrate denied the motion for interim custody and held that before it could address the permanent-custody motion, HCJFS must hold a "permanency staffing" to determine if the agency wanted to seek permanent custody as a disposition.

{¶12} In November 2017, I.E.-J. was removed from mother's care, for the fourth time, after mother's arrest in Kentucky for driving under the influence of alcohol and having an open container in the car. Mother had left I.E.-J. in the care of a person HCJFS had not approved, and the caretaker was unable and/or unwilling to care for I.E.-J. the following day. Additionally, HCJFS was unable to reach mother following her release from jail. Because of these circumstances, HCJFS filed an amended complaint for permanent custody of the children.

{¶13} At the adjudication and disposition hearings, the HCJFS caseworker testified that mother had requested additional services, so HCJFS offered mother the option of submitting to a hair-follicle test in place of the toxicology screens, and completing a parenting evaluation. The HCJFS caseworker testified that mother refused the hair-follicle test, and, due to scheduling conflicts, ultimately decided that she did not want to complete the parenting evaluation.

{¶14} At the conclusion of the adjudication and disposition hearings, the magistrate adjudicated C.E. and I.E.-J. dependent and denied HCJFS's motion for permanent custody of the children. With respect to C.E., the magistrate noted that C.E. could not be returned to his mother's care because of his medical needs, and that he had been successfully transferred to St. Joseph's Infant home, a long-term-care nursing facility, with the consent of his mother. The magistrate therefore awarded HCJFS temporary custody to determine whether it actually needed

5

permanent custody of C.E. in order to continue his placement at the long-term-care facility.

{¶15} With respect to I.E.-J., the magistrate noted mother's many missed screens and found that mother was intentionally avoiding toxicology screens. Due to her lack of attendance, the magistrate determined that the screens could not rule out ongoing alcohol use despite two negative screens. The magistrate also noted that even though the charges in Kentucky against mother were eventually dismissed without prejudice, the testimony of the arresting officer presented by HCJFS established that mother was found asleep at the wheel of a car with an open container and that she was highly intoxicated. Despite these findings, the magistrate found it was in the best interest of I.E.-J. to remand custody to mother with orders of protective supervision because (1) there had been no evidence presented that mother's suspected alcohol abuse had harmed I.E.-J.; (2) I.E.-J. was bonded to mother; and (3) I.E.-J. had not adjusted well to foster care.

{¶16} HCJFS filed objections to the magistrate's decision, which the juvenile court sustained, finding that mother's alcohol abuse had harmed I.E.-J. when mother had left her without adequate supervision on at least one occasion. Accordingly, the juvenile court determined that it was in the best interest of the children to be committed to the permanent custody of HCJFS since the children could not and should not be returned to either of their parents.

{¶17} This appeal followed.

{¶18} In her first assignment of error, mother contends that the juvenile court erred by granting permanent custody of C.E. to HCJFS. We agree.

{¶19} The juvenile court's entry stated in part,

6

[t]he Magistrate's Decision is rejected as the judgment of this Court as it pertains to [I.E.-J.]. The Magistrate's Decision regarding [C.E.] is accepted and approved as the judgment of the court. Therefore, based upon clear and convincing evidence presented and in the best interest of the child, [I.E.-J.] and [C.E.] are committed to the Permanent Custody of Hamilton County Job and Family Services. It is in the best interest of the children to be placed in Permanent Custody.

{¶20} Given that the juvenile court specifically adopted that part of the magistrate's decision denying HCJFS's motion for permanent custody of C.E., we believe that the court's following sentence, which committed both children to the permanent custody of HCJFS, was a clerical error. This conclusion is supported by the fact that the juvenile court's analysis in its entry focused solely on I.E.-J.

{¶21} To the extent this was not a clerical error, we hold that the juvenile court erred in granting permanent custody of C.E. to HCJFS as an initial disposition following a finding of dependency. Given that C.E. has been admitted to an appropriate long-term-care facility with the consent of mother, a grant of temporary custody to HCJFS is in the best interest of C.E. so that the agency can determine whether a termination of parental rights is necessary to maintain C.E. at his current long-term-care facility.

{¶22} The first assignment of error is sustained, and this case is remanded to the juvenile court to correct its clerical error.

{¶23} In her second assignment of error, mother argues that the trial court erred by adjudicating I.E.-J. dependent. Because mother did not object to the magistrate's finding of dependency, we may only review for plain error. *See In re Etter*, 134 Ohio App.3d 484, 631 N.E.2d 694 (1st Dist.1998). Plain error is not favored in civil cases and "may be applied only in the extremely rare case involving exceptional circumstances where error, to which no objection was made at the trial court seriously affects the basic fairness, integrity, or public reputation of the judicial process, thereby challenging the legitimacy of the underlying judicial process itself." *State v. Morgan*, 153 Ohio St.3d 196, 2017-Ohio-7565, 103 N.E.3d 784, ¶ 40, citing *Goldfuss v. Davidson*, 79 Ohio St.3d 116, 679 N.E.2d 1099 (1997).

{¶24} A finding of dependency must be supported by clear and convincing evidence. Juv.R. 29(E)(4). At the custody proceeding, it was established that mother was arrested in Kentucky and spent the night in jail. Although mother left I.E.-J. with a caretaker, this caretaker testified she was not expecting to care for I.E.-J. overnight and was unable to care for her the next day. R.C. 2151.01(C) provides that a dependent child is any child whose condition or environment is such as to warrant the state, in the interests of the child, in assuming the child's guardianship. Because the evidence demonstrated there was no one to care for I.E.-J. during mother's arrest and brief stay in jail, there was clear and convincing evidence to support the juvenile court's finding of dependency. The second assignment of error is overruled.

{¶25} In mother's third and final assignment of error, she argues that the court's judgment awarding permanent custody of both children to HCJFS was

against the manifest weight of the evidence and not supported by sufficient evidence. We first note that we have already determined that the juvenile court made a clerical error in awarding HCJFS permanent custody of C.E., and have held that if it was not a clerical error, it was not in C.E.'s best interest to award permanent custody to HCJFS. To that extent, we sustain mother's third assignment of error. We now address whether the court's award of permanent custody of I.E.-J. to HCJFS was proper.

{¶26} The trial court's award of permanent custody must be supported by clear and convincing evidence. *In re W.W.*, 1st Dist. Hamilton No. C-110363, 2011-Ohio-4912, ¶ 46. "Clear and convincing evidence" is evidence sufficient to "produce in the mind of the trier of fact a firm belief or conviction as to the facts sought to be established." *In re K.H.*, 119 Ohio St.3d 538, 2008-Ohio-4825, 895 N.E.2d 809, ¶ 42, quoting *Cross v. Ledford*, 161 Ohio St. 469, 120 N.E.2d 118 (1954), paragraph three of the syllabus. We will not substitute our own judgment for that of the trial court applying a clear-and-convincing standard where there is ample competent and credible evidence supporting the trial court's determination. *See In re A.J.O. and M.N.O.*, 1st Dist. Hamilton No. C-180680, 2019-Ohio-975, ¶ 6.

{¶27} The disposition of a child determined to be dependent, abused or neglected is controlled by R.C. 2151.353, and the court may enter any order of disposition provided for in R.C. 2151.353(A). But before the court can grant permanent custody of a child to the agency, the court must determine: (1) pursuant to R.C. 2151.414(E) that the child cannot or should not be placed with one of her parents within a reasonable time; and (2) pursuant to R.C. 2151.414(D), that the permanent commitment is in the best interest of the child. R.C. 2151.353(A)(4).

### *Cannot and Should Not be Placed with Mother*

{¶28} Under R.C. 2151.414(E), the juvenile court must find that a child cannot be placed with either parent within a reasonable time or should not be placed with either parent if it determines that one of the factors listed in R.C. 2151.414(E)(1) through (16) exists as to each of the child's parents.

{¶29} Here, the juvenile court found by clear and convincing evidence that father had abandoned I.E.-J., *see* R.C. 2151.414(E)(1), and that mother had had her parental rights involuntarily terminated with respect to a sibling of I.E.-J., and had failed to provide clear and convincing evidence to prove that, notwithstanding the prior termination, she could provide a legally secure permanent placement and adequate care for the health, welfare, and safety of I.E.-J. *See* R.C. 2151.414(E)(11).

{¶30} The juvenile court's findings are supported by ample evidence in the record. Father has not seen I.E.-J. in over six years. And mother had her parental rights terminated by an Iowa court with respect to three of her children due to issues with domestic violence, mental health and substance abuse. Mother has not demonstrated that she can provide a legally secure permanent placement for I.E.-J. despite the prior termination of parental rights. I.E.-J. has been removed from mother's care four times—once in Iowa because of illegal drugs found in the home; twice because mother was arrested (once for domestic violence and once for driving while under the influence for alcohol/having an open container) and once because of a catastrophic injury to I.E.-J.'s brother, on a night when mother's blood-alcohol level was .09. Further, out of the over 20 urine screens that HCJFS scheduled for mother, she only attended four. One of those four screens was returned "abnormal" and two were not random, because mother knew when she would be tested. The

record also demonstrated that mother has a history of refusing services provided to her, and her lack of attendance at the toxicology screens and her refusal to submit to a hair-follicle test and complete a parenting evaluation demonstrate that. At this time, a problem with abusing alcohol cannot be ruled out because of a lack of completion of services. The court's finding that I.E.-J. cannot and should not be returned to either parent is properly supported in the record.

### *Best Interest*

{¶31} In assessing the best interest of a child for purposes of a permanent-custody determination, a juvenile court must consider all relevant factors, including: (a) the child's interaction with parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child; (b) the wishes of the child; (c) the custodial history of the child; (d) the child's need for a legally secure placement and whether that type of placement can be achieved without a grant of permanent custody; and (e) whether any of the factors under R.C. 2151.414(E)(7) to (11) apply. *See* R.C. 2151.414(D)(1)(a)-(e); *In re Z.P.*, 1st Dist. Hamilton Nos. C-160572, C-160584 and C-160620, 2018-Ohio-6987, ¶ 31.

{¶32} Mother argues that because (1) she has a strong bond with I.E.-J., (2) I.E.-J. desires to live with mother, and (3) I.E.-J. has not adjusted well to foster care, that it is in I.E.-J.'s best interest to be placed in mother's care with orders of protective supervision. But the juvenile court found that the other factors to consider under R.C. 2151.414(D) demonstrate that it was in I.E.-J.'s best interest to be placed in the permanent custody of HCJFS. That finding is supported by clear and convincing evidence in the record.

{¶33} With respect to the children's interaction with significant others, the court noted that I.E.-J. was bonded with mother and had not adjusted well to foster care. I.E.-J. had difficulty living with mother as well, displaying significant behavioral issues. *See* R.C. 2151.414(D)(1)(a). And, in considering the wishes of the child, the court noted that I.E.-J. desired to live with mother. *See* R.C. 2151.414(D)(1)(b). The court also considered the custodial history of I.E.-J. and her need for a legally secure and permanent placement, noting that I.E.-J. had been adjudicated dependent and removed from mother's care four different times by courts in two different states, and that I.E.-J. had been in the temporary care of HCJFS for more than 12 months at the time of the court's permanent-custody determination. *See* R.C. 2151.414(D)(1)(c) and (d).

{¶34} Finally, the court noted that the factors in R.C. 2151.414(E)(9) and (11) applied. First, mother left I.E.-J. without adequate supervision on at least one occasion due to alcohol abuse, and I.E.-J. was removed from mother's care in Iowa due to drugs found in the home and the use of drugs by I.E.-J.'s caretaker. Second, mother had her parental rights terminated with respect to three of I.E.-J.'s siblings while residing in Iowa. Mother refused services through DCS in IA, and has consistently either refused or failed to complete services through HCJFS relating to similar issues that led to mother's parental rights being terminated for I.E.-J.'s older siblings. *See* R.C. 2151.414(D)(1)(3).

{¶35} Accordingly, after our review of the record, we hold that the juvenile court's determinations are supported by clear and convincing evidence, and are not against the manifest weight of the evidence. The record reflects that I.E.-J. cannot be placed with mother within a reasonable time, or should not be placed with mother,

and that her best interest would be served by a grant of permanent custody. Therefore, with respect to I.E.-J., we overrule the third assignment of error in part. With resepct to C.E., we sustain the assignment of error in part.

### *Conclusion*

{¶36} The judgment of the trial court awarding permanent custody of I.E.-J. to HCJFS is affirmed. We reverse the part of the trial court's judgment awarding permanent custody of C.E. to HCJFS and remand this cause to the juvenile court to correct its entry and enter an award of temporary custody of C.E. to HCJFS.

Judgment affirmed in part, reversed in part, and cause remanded.

MYERS, J., concurs.
ZAYAS, J., concurs in judgment only.

Please note:
The court has recorded its own entry on the date of the release of this opinion.