[Cite as *In re A.I.*, 2024-Ohio-1992.]

**COURT OF APPEALS OF OHIO**

**EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA**

IN RE A.L.                                          :

                                                            :                    No. 113447

A Minor Child                                    :

[Appeal by Am.L., Mother]                :

                                                            :

---

JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** May 23, 2024

---

Civil Appeal from the Cuyahoga County Court of Common Pleas
Juvenile Division
Case No. AD23901700

---

*Appearances:*

Christina M. Joliat, *for appellant.*

Michael C. O'Malley, Cuyahoga County Prosecuting
Attorney, and Joseph C. Young, Assistant Prosecuting
Attorney, *for appellee.*

MICHAEL JOHN RYAN, J.:

{¶ 1} Am.L., Mother ("Mother") of A.L., appeals from the juvenile court's

October 2023 judgment granting the motion of the Cuyahoga County Division of

Children and Family Services ("CCDCFS" or the "agency") to modify temporary

custody of A.L. to permanent custody.[1]  After a thorough review of the facts and pertinent law, we affirm.

**Procedural and Factual Background**

{¶ 2}   Mother gave birth to A.L. in 2021; at the time, Mother was a minor. The child was removed from Mother's custody in August 2022, when the child was eight months old, after Mother and her mother (maternal grandmother) were involved in a physical altercation while Mother was holding the child.  The altercation required police intervention.  In addition to the physical altercation, issues regarding Mother's mental health were cited as the ground for the child's removal.

{¶ 3}   A.L. was adjudicated to be abused and dependent and was placed in the agency's temporary custody.  Mother, still a minor, was also placed in the agency's custody (Mother and A.L. were placed in separate foster homes).  A case plan was created for Mother.  The plan included assisting Mother with addressing issues related to her mental health, anger management, parenting, conflict with her own mother, and domestic violence.  It contemplated Mother's participation in parenting education, psychiatric services, and family preservation counseling.

{¶ 4}   Mother turned 18 years old in June 2023.  In July 2023, CCDCFS filed a motion to modify temporary custody to permanent custody.  Trial was held on the

---

[1] Mother is the only appellant; Father has not appealed.  We limit the facts, and discussion thereof, as they solely relate to Mother.

agency's motion in October 2023; at the time of trial, A.L. was approximately two months shy of his second birthday. The following facts were adduced.

{¶ 5} CCDCFS referred Mother for parenting education. Mother did not complete this component of her case plan. She attended eight individual sessions but did not participate in any of the mandatory group sessions. Mother's case worker who testified at trial opined that Mother did not benefit from the parenting sessions she had attended. The case worker, who oversaw Mother's visits with A.L., testified that, upon visiting with A.L., Mother would initially show affection toward the child, but would soon be distracted by either her phone or other teenagers who were at the library where the visits occurred and would need redirection. For example, the case worker testified that on one occasion they had crayons and a coloring book for A.L., and Mother would just give the child the crayons while she was on her phone instead of engaging with him by joining in the activity herself.

{¶ 6} The case worker testified that in March 2023, Mother started going "absent without leave" ("AWOL"); she was only sporadically involved with the agency, which included sporadic visitations with the child. When Mother turned 18 years old in June 2023, she left her foster home in Cleveland, went to Columbus, and refused to tell CCDCFS where she was living. Two agency case workers travelled to Columbus to find Mother; they were eventually successful in locating her approximately two weeks prior to trial. Mother was angry that the agency had located her. The agency learned that Mother was in a domestically violent relationship with a man in his thirties and was living with the man. Mother told her

case worker that "things happen," she was engaged to the man, and wanted to work through their issues. According to the case worker, Mother downplayed the seriousness of domestic violence.

{¶ 7} After moving to Columbus, Mother would occasionally come back to Cleveland to get her hair done, but, by her own admission, would not visit A.L. In mid-August 2023, Mother did begin weekly virtual 15-20 minute visits with the child. She had not seen A.L. in person for the seven months prior to trial.

{¶ 8} Regarding mental health, Mother was diagnosed with oppositional defiant disorder, major depressive disorder, and as being bipolar; she was prescribed several medications. Mother did engage in counseling services while she was in her foster-care placement, but discontinued after she went AWOL. While she was engaged in services, she was not consistently compliant with her medication, however. The case worker described instances when Mother would be "out of control or she'll go from screaming to crying or there's a calm moment and then she's screaming again." CCDCFS made arrangements for Mother to engage in counseling services in Columbus, but she did not engage. Mother also refused to return to Cleveland and continue with her case plan objectives there.

{¶ 9} Mother failed to engage in domestic violence services, which had been included as part of her case plan because of the physical altercation she had with her mother. In addition to failing to engage, at the time of trial she was in a domestically violent relationship with an older man and downplayed the seriousness of the situation.

{¶ 10} The agency case worker testified that she had concerns for A.L.'s safety if the child were to be returned to Mother. In the year since the child's removal, Mother had not made significant progress on her case plan, and given her failure to engage or complete services, Mother would essentially need to start over to meet her case plan objectives. The worker testified that Father declined to have any involvement with the agency and had little to no contact with the child. CCDCFS attempted to find an appropriate relative who might have been able to care for the child, but its efforts were unsuccessful. According to the worker, A.L. was "in a safe environment," "growing," "thriving," "medically up-to-date," and "happy."

{¶ 11} A.L.'s guardian ad litem ("GAL") believed that Mother had not made "any type of significant progress" on her case plan to warrant an extension of temporary custody. The GAL believed permanent custody to CCDCFS was in A.L.'s best interest.

**Trial Court's Findings**

{¶ 12} The trial court found under R.C. 2151.414(B)(1)(a) that "the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents." In making this finding, the court considered the factors under R.C. 2151.414(E); specifically, (1) failure to remedy, R.C. 2151.414(E)(1); lack of commitment, R.C. 2151.414(E)(4); and abandonment, R.C. 2151.414(E)(10). The trial court also made findings under the catchall provision of R.C. 2151.414(E)(16).

{¶ 13} Further, the trial court made a best interest determination under R.C. 2151.414(D). The court found that several factors under subsections (1)-(5) weighed in favor of a grant of permanent custody to CCDCFS; specifically, (1) the interaction and interrelationship of the child with significant individuals in the child's life, R.C. 2151.414(D)(1)(a); (2) the child's wishes as expressed directly or through the child's GAL, R.C. 2151.414(D)(1)(b); (3) the child's custodial history, R.C. 2151.414(D)(1)(c); and the child's need for a legally secure placement, R.C. 2151.414(D)(1)(d). The trial court made a further finding under the catchall provision of subsection (D)(1)(e) that the child had been abandoned.

**Mother's Assignment of Error**

{¶ 14} Mother's sole assignment of error reads as follows:

> The trial court's order granting permanent custody to the Agency was not based upon sufficient clear and convincing evidence, was against the manifest weight of the evidence and it erred in finding permanent custody to be in the best interest of the child.

**Law and Analysis**

{¶ 15} In her sole assignment of error, Mother challenges the trial court's decision to grant permanent custody of A.L. to CCDCFS.

{¶ 16} We begin our analysis with the recognition that, while a parent's right to raise a child is an essential and basic civil right, *In re Hayes*, 79 Ohio St.3d 46, 48, 679 N.E.2d 680 (1997), children have the right to "parenting from either [biological] or adoptive parents which provides support, care, discipline, protection and

motivation." *In re Hitchcock*, 120 Ohio App.3d 88, 102, 696 N.E.2d 1090 (8th Dist.1996).

{¶ 17} R.C. 2151.414, Ohio's permanent-custody statute, provides that the juvenile court's judgment granting permanent custody must be supported by clear and convincing evidence. Clear and convincing evidence has been defined as

> "that measure or degree of proof which is more than a mere 'preponderance of the evidence,' but not to the extent of such certainty as is required beyond a 'reasonable doubt' in criminal cases, and which will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established."

*In re K.H.*, 119 Ohio St.3d 538, 2008-Ohio-4825, 895 N.E.2d 809, ¶ 42, quoting *Cross v. Ledford*, 161 Ohio St. 469, 120 N.E.2d 118 (1954), paragraph three of the syllabus.

{¶ 18} We will not reverse a juvenile court's termination of parental rights and award of permanent custody to an agency unless the judgment is not supported by clear and convincing evidence. *In re N.B.*, 8th Dist. Cuyahoga No. 101390, 2015-Ohio-314, ¶ 48; *In re M.J.*, 8th Dist. Cuyahoga No. 100071, 2013-Ohio-5440, ¶ 24.

{¶ 19} The Supreme Court of Ohio has explained that

> [g]iven that R.C. 2151.414 requires that a juvenile court find by clear and convincing evidence that the statutory requirements are met, * * * the sufficiency-of-the-evidence and/or manifest-weight-of-the-evidence standards of review are the proper appellate standards of review of a juvenile court's permanent-custody determination, as appropriate depending on the nature of the arguments that are presented by the parties.

*In re Z.C.*, 173 Ohio St.3d 359, 2023-Ohio-4703, 230 N.E.3d 1123, ¶ 11.

{¶ 20} Mother's arguments in this appeal are manifest-weight-of-the-evidence arguments. Regarding a challenge based upon manifest weight of the evidence, the Supreme Court of Ohio has explained:

> "Weight of the evidence concerns 'the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other. It indicates clearly to the [factfinder] that the party having the burden of proof will be entitled to their [judgment], if, on weighing the evidence in their minds, they shall find the greater amount of credible evidence sustains the issue which is to be established before them. Weight is not a question of mathematics, but depends on its effect in inducing belief.'"

*Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, 972 N.E.2d 517, ¶ 12, quoting *State v. Thompkins*, 78 Ohio St.3d 380, 678 N.E.2d 541 (1997), quoting *Black's Law Dictionary* 1594 (6th Ed.1990).

{¶ 21} When conducting a manifest-weight review, this court "weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the [finder of fact] clearly lost its way and created such a manifest miscarriage of justice that the [judgment] must be reversed and a new trial ordered." *Eastley* at ¶ 20.

{¶ 22} This court has stated that

> [t]he discretion which a trial court enjoys in custody matters should be accorded the utmost respect, given the nature of the proceeding and the impact the court's determination will have on the lives of the parties concerned. *In re Satterwhite*, 8th Dist. Cuyahoga No. 77071, 2001-Ohio-4137. The knowledge a trial court gains through observing the witnesses and the parties in a custody proceeding (i.e., observing their demeanor, gestures and voice inflections and using these observations in weighing the credibility of the proffered testimony) cannot be conveyed to a reviewing court by a printed record. *Id.*, citing *Trickey v. Trickey*, 158 Ohio St. 9, 13, 106 N.E.2d 772 (1952).

*In re C.T.*, 8th Dist. Cuyahoga No. 87159, 2006-Ohio-1944, ¶ 15.

{¶ 23} R.C. 2151.414 sets forth a two-prong analysis to be applied by a juvenile court in adjudicating a motion for permanent custody. Under the statute, the juvenile court is authorized to grant permanent custody of a child to the agency if, after a hearing, the court determines, by clear and convincing evidence, that any of the five factors under R.C. 2151.414(B)(1)(a) to (e) exists and, furthermore, permanent custody is in the best interest of the child under the factors enumerated in R.C. 2151.414(D)(1).

{¶ 24} Regarding the first prong, the trial court made a finding under R.C. 2151.414(B)(1)(a) that "the child cannot be placed with either of the child's parents within a reasonable time or cannot be placed with the child's parents." In making this finding, the trial court relied on the factors set forth in R.C. 2151.414(E), the finding of any one of which requires the "cannot or should not be placed" finding. Specifically, R.C. 2151.414(E) states, in pertinent part, that "[i]f the court determines, by clear and convincing evidence, * * * that one or more of the [enumerated (E) factors] exist as to each of the child's parents, the court shall enter a finding that the child cannot be placed with either parent within a reasonable time or should not be placed with either parent[.]"

{¶ 25} Under R.C. 2151.414(E)(1), the trial court found that Mother failed to remedy the conditions that led to the child's removal. The record shows that Mother's case plan included services to address her issues with mental health, parenting, anger management, and domestic violence. Mother engaged in some

services while she was in her foster-care placement. She never finished any of the referred programs through to completion, however. Further, Mother was not compliant with her medications. After she went AWOL in March 2023, Mother refused all involvement with CCDCFS, even after the agency informed her it could get services set up for her in Columbus, where she was living. As of the time of the trial, Mother was not engaged in any services. On this record, the weight of the evidence clearly and convincingly supports the trial court's "failure to remedy" finding.

{¶ 26} The trial court also found under R.C. 2151.414(E)(4) that Mother "demonstrated a lack of commitment" toward A.L. The record shows that Mother voluntarily left Cleveland for Columbus, and in doing so, completely abandoned efforts to comply with any of her case plan objectives. Agency workers located Mother in Columbus and offered to get her services there, but Mother declined. Further, by Mother's own admission, she came back to Cleveland several times to get her hair done, but did not attempt to see A.L. On this record, the weight of the evidence clearly and convincingly supports the trial court's "lack of commitment" finding.

{¶ 27} The trial court also made an abandonment finding under R.C. 2151.414(E)(10). "[A] child shall be presumed abandoned when the parents of the child have failed to visit or maintain contact with the child for more than ninety days, regardless of whether the parents resume contact with the child after that period of ninety days." R.C. 2151.011(C). The record demonstrates that Mother went

AWOL in March 2023, and in June 2023, moved from Cleveland to Columbus. Mother had not seen her child for the seven months preceding the trial date. The weight of the evidence clearly and convincingly supports the trial court's "abandonment" finding.

{¶ 28} Under the catchall provision of R.C. 2151.414(E)(16), the trial court reiterated its finding that Mother had not visited the child for seven months and had not showed interest in reunification with the child. The trial court acknowledged that, prior to going AWOL, Mother did visit with A.L., but noted that there was a lack of bonding and engagement because of Mother getting distracted. The trial court also noted that a domestic violence incident Mother had with her mother in the presence of the child caused the child's removal, and in Columbus, Mother was in a domestically violent relationship. The other, relevant findings made under R.C. 2151.414(E)(16) clearly and convincingly support the trial court's "cannot or should not" finding.

{¶ 29} In light of the trial court's determination, which we have found clearly and convincingly was supported by the weight of the evidence, that four subsections under R.C. 2151.414(E) applied, the trial court was required to find, as it did, that the child cannot be placed with Mother within a reasonable time or should not be placed with Mother or alleged Father. *See* R.C. 2151.414(E) ("If the court determines, by clear and convincing evidence, * * * that one or more of the [enumerated (E) factors] exist as to each of the child's parents, the court shall enter a finding that the child cannot be placed with either parent within a reasonable time

or should not be placed with either parent[.]"); *see also In re I.R.*, 2021-Ohio-3103, 179 N.E.3d 138, ¶ 69 (8th Dist.) (based on its findings under R.C. 2151.414(E), the juvenile court was required to find that the child could not be placed with either of his parents within a reasonable time or should not be placed with either parent), citing *In re C.H.*, 8th Dist. Cuyahoga Nos. 82258 and 82852, 2003-Ohio-6854, ¶ 58.

{¶ 30} We now consider the second prong of a motion for permanent custody, that is, the best interest of the child. In determining the best interest of the child, R.C. 2151.414(D)(1) mandates that the juvenile court consider all relevant factors, including, but not limited to, the following:

> (a) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child;
>
> (b) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;
>
> (c) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period * * *;
>
> (d) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency;
>
> (e) Whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child.

{¶ 31} The Supreme Court of Ohio has stated the following regarding a best interest determination:

> A court must conclude by clear and convincing evidence that an assignment of permanent custody is in the best interest of the child.

R.C. 2151.414(E). The court must consider all of the elements in R.C. 2151.414(D) as well as other relevant factors. There is not one element that is given greater weight than the others pursuant to the statute. The heightened importance that the appellate court assigned to [one factor] is not required by or even hinted at in the statute, nor is the trial court required to credit evidence in support of maintaining the parental relationship when evidence supporting termination outweighs it clearly and convincingly.

*In re Schaefer*, 111 Ohio St.3d 498, 2006-Ohio-5513, 857 N.E.2d 532, ¶ 56.

{¶ 32} Under R.C. 2151.414(D)(1)(a), the trial court found that "the child has a strong bond with the caregivers and other children in the home. Child * * * has not developed much of a bond with [Mother] due to her lack of visits/communication with the child." Although Mother initially visited the child and would show affection, she would get distracted with her phone and other teenagers in the library, where the visitations occurred. Then, in March 2023, Mother went AWOL, and as of the time of trial, she had not seen A.L. for the preceding seven months. The case worker testified that the child was "in a safe environment," "growing," "thriving," "medically up-to-date," and "happy" in the foster home. The trial court's finding under R.C. 2151.414(D)(1)(a) was supported by clear and convincing evidence.

{¶ 33} Regarding the wishes of the child under R.C. 2151.414(D)(1)(b), A.L. was too young to express his desire, but the GAL expressed his belief that permanent custody was in A.L.'s best interest. The record shows that the GAL based his recommendation on his assessment that Mother had not made "any significant"

progress on her case plan. On this record, the trial court's finding under R.C. 2151.414(D)(1)(b) was supported by clear and convincing evidence.

{¶ 34} Regarding the child's custodial history, which is a consideration under R.C. 2151.414(D)(1)(c), the trial court found that A.L. had been in the agency's custody since August 2022, "which is more than half of his young life." At the time of the October 2023 trial, A.L. was 22 months old and had been in custody since he was eight months old — which was over a year and "more than half of his young life," as found by the trial court.

{¶ 35} Regarding R.C. 2151.414(D)(1)(d), under which the trial court considers the child's need for a legally secure permanent placement and whether that could be achieved without a grant of permanent custody, the trial court found that "Mother has failed to engage in case plan services and remedy the cause for removal * * * and no other relatives are willing or appropriate to care for the child." Further, as mentioned, the trial court found that A.L. cannot or should not be placed with Mother, and once that finding was made, the trial court was precluded from returning the child to Mother. For the reasons already discussed, the record clearly and convincingly supports the trial court's "failure to remedy" and "cannot or should not be placed" findings.

{¶ 36} Regarding the possibility of placement of the child with other relatives, the record shows that placement with maternal grandmother was deemed inappropriate because of the nature of her relationship with Mother and because of substance abuse issues she had. No other relatives were appropriate or willing to

assume responsibility, including Father. Thus, the trial court's findings under R.C. 2151.414(D)(1)(d) were supported by clear and convincing evidence.

{¶ 37} On this record, the trial court's finding that permanent custody was in A.L.'s best interest was supported by clear and convincing evidence.

{¶ 38} We next consider two other arguments Mother raises in the appeal: (1) that the trial court could have granted an extension of temporary custody instead of permanent custody; and (2) that CCDCFS improperly terminated custody of Mother when she turned 18 years old, thus "minimizing her ability to reunify with her son as she had no supports and could not even reach her caseworker."

{¶ 39} Regarding Mother's contention about an extension of temporary custody, under R.C. 2151.415(D)(1), a first extension of temporary custody may only be granted if the court finds

> by clear and convincing evidence, that the extension is in the best interest of the child, there has been significant progress on the case plan of the child, and there is reasonable cause to believe that the child will be reunified with one of the parents or otherwise permanently placed within the period of extension.

{¶ 40} This court has held that if an extension is not in the child's best interest, or reunification is not likely in the next six months, the trial court is not required to grant an extension of temporary custody. *In re Da.B.*, 8th Dist. Cuyahoga No. 105886, 2018-Ohio-689, ¶ 17. The record here demonstrates that Mother had not made significant progress on her case plan. The court made a finding that "Mother has *not* made significant progress on the case plan * * * and therefore a first extension of temporary custody cannot be ordered and would not

be in the best interest of the child." (Emphasis sic.) The court further found that "there is not reasonable cause to believe that the child will be reunified with one of the parents or otherwise permanently placed within the period of the extension." The evidence in the record supports the trial court's findings. In particular, because Mother had not made any significant progress on her case plan objectives, she would, as the case worker noted, essentially need to start from the beginning. Thus, we find no merit to Mother's contention.

{¶ 41} Regarding the agency's termination of temporary custody of Mother, the termination occurred by operation of law. The juvenile court's jurisdiction to address matters involving a dependent child is governed by R.C. 2151.353(F)(1), which provides in pertinent part that

> [t]he court shall retain jurisdiction over any child for whom the court issues an order of disposition pursuant to [R.C. 2151.353(A), R.C. 2151.414, or R.C. 2151.415] until the child attains the age of eighteen years if the child does not have a developmental disability or physical impairment, the child attains the age of twenty-one years if the child has a developmental disability or physical impairment, or the child is adopted and a final decree of adoption is issued, except that the court may retain jurisdiction over the child and continue any order of disposition * * * for a specified period of time to enable the child to graduate from high school or vocational school. The court shall make an entry continuing its jurisdiction under this division in the journal.

{¶ 42} Thus, "in the absence of the applicability of very limited exceptions, the juvenile court loses jurisdiction of a child previously adjudicated dependent, neglected, or abused once the child reaches 18 years old." *In re A.B.*, 9th Dist. Lorain No. 16CA010927, 2017-Ohio-4344, ¶ 21, citing *In re M.*, 6th Dist. Wood No. WD-03-092, 2004-Ohio-3798, ¶ 9. "This section is read very narrowly by appellate

courts. Jurisdiction of the juvenile court ceases to exist over a child who has turned 18, unless very limited exceptions apply." *In re M.* at *id.*

{¶ 43} There is no indication in the record that Mother has a developmental disability or physical impairment or was adopted. Mother contends that she did not graduate high school and therefore the juvenile court impermissibly terminated custody of her. Allowing the juvenile court to retain jurisdiction of a child after the child reaches the age of majority is discretionary ("[T]he court *may* retain jurisdiction over the child and continue any order of disposition * * * for a specified period of time to enable the child to graduate from high school." (Emphasis added.) R.C. 2151.353(F)(1)). The record here demonstrates that Mother moved to Columbus when she turned 18 and was not attending school. Thus, the trial court would not have had a basis to extend jurisdiction over Mother on that ground.

{¶ 44} We recognize that "termination of the rights of a birth parent is an alternative of last resort." *In re Gill*, 8th Dist. Cuyahoga No. 79640, 2002-Ohio-3242, ¶ 21. The purpose of the termination of parental rights statutes is to make a more stable life for the dependent children and to facilitate adoption to foster permanency for children. *In re N.B.*, 8th Dist. Cuyahoga No. 101390, 2015-Ohio-314, ¶ 67. This court does not look upon these matters lightly, and this case is certainly no exception. But in light of the above, there was competent, credible evidence supporting the juvenile court's determination. Thus, Mother's sole assignment of error is overruled.

{¶ 45} Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to said court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____

MICHAEL JOHN RYAN, JUDGE

EILEEN T. GALLAGHER, P.J., and
SEAN C. GALLAGHER, J., CONCUR