[Cite as *In re Z.H.*, 2025-Ohio-2596.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

IN RE Z.H.                                     :

A Minor Child                                  :                 No. 114568

[Appeal by R.S., Father]                       :

JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** July 24, 2025

Civil Appeal from the Cuyahoga County Court of Common Pleas
Juvenile Division
Case No. AD23901764

***Appearances:***

Dunham Law LLC and Michael P. Dunham, *for appellant.*

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Joseph C. Young, Assistant Prosecuting Attorney, *for appellee.*

MARY J. BOYLE, J.:

{¶ 1} Appellant-R.S. ("Father"), appeals the decision of the Cuyahoga County Juvenile Court terminating his parental rights and awarding custody of his minor son Z.H. ("the child") to the Cuyahoga County Division of Children and

Family Services ("the agency"). After careful review of the record, we affirm the juvenile court's decision.

## I. Facts and Procedural History

{¶ 2} The record reflects that in April 2022, the child, who was five years old at the time, survived a house fire that caused the death of his mother. Thereafter, the child alternated between Father and girlfriend's home and the paternal grandmother's home. On November 2, 2022, during a private custody battle between Father and paternal grandmother, the child was placed in the emergency custody of the agency, because Father was sentenced to 30 days in Lake County jail. Although the agency had emergency custody, the child was placed with Father's girlfriend while he served his sentence.

{¶ 3} On February 8, 2023, the agency filed a complaint alleging that the child was neglected and requested temporary custody because of concerns with Father's substance-abuse problems and pending criminal cases that included numerous outstanding warrants. The child was then removed and placed in foster care. Following a hearing on February 27, 2023, emergency custody was granted to the agency. Father did not appear at the hearing because of his many outstanding warrants, but he advised his attorney that he agreed with the order to grant temporary custody to the agency.

{¶ 4} In April 2023, a hearing on the complaint for neglect was held and the child was adjudicated to be neglected and ordered committed to the temporary custody of the agency. Thereafter, the agency moved for permanent custody of the

child in October 2023, again due to Father's substance-abuse problems and pending criminal cases. Trial commenced before the juvenile court judge on August 22, 2024, and concluded on September 19, 2024. The agency called two witnesses. Father testified on his own behalf. The following is a summary of the testimony adduced at trial.

{¶ 5} On the first day of testimony, Cleveland Police Officer Anthony Lee ("Officer Lee") testified that he arrested Father on July 24, 2024, for possession of cocaine after watching him repeatedly drive through an area known for drugs and prostitution. Officer Lee stated that Father ran from police, discarding objects as he ran, including a crack pipe. He testified that Father admitted to purchasing and using crack cocaine that day and stated he "was chemically dependent." (Tr. 15.)

{¶ 6} Next, Richard Grace a licensed social worker ("Grace") from the agency testified that he was assigned to the child's case in November 2022. He testified that the case plan addressed Father's issues involving substance abuse, domestic violence, and parenting skills. Grace explained that during the first six months, Father did not comply with the assessments and treatments but eventually "hit the ground running" trying to regain custody of the child after he served time in Lake County. (Tr. 28.) He testified that Father completed anger-management and parenting classes and had appropriate housing.

{¶ 7} Grace advised that Father attended all visitations when he was not in jail and appeared to be sober until July 2024, when Grace noticed a change in Father's behavior. He testified that during one visit, Father seemed "a little out of

sorts, tired, [he] just didn't seem like himself." (Tr. 22.) Father slept through more than half of the two-hour visit with the child. During another visit, Father was again "out of sorts" and confessed to Grace that he had "f***ed up" stating that he was in a car accident. Father admitted that he had relapsed, the car was totaled, and he woke up in an ambulance not knowing he had run into another car. Grace identified a certified copy of the ticket issued to Father for the crash on August 13, 2024. Father was also charged with operating a vehicle impaired for that same incident. Grace testified that he contacted Father after both visits offering assistance.

{¶ 8} Grace testified that the child, who was now seven years old, was doing well in his foster home, sees his foster parents as "mom and dad" and wants to remain with them. (Tr. 29.) He testified that visitation between the child and Father was always supervised because the child was uncomfortable being alone with Father and would often act out after visits. Grace believed that Father really wanted to be a good father but was not capable because of his 20-year battle with addiction. He recommended that permanent custody be granted to the agency to ensure a stable home environment for the child.

{¶ 9} The agency rested, and the trial was continued to September 5, 2024, for the presentation of Father's case. On that day, the trial was continued because Father was again in the county jail. On September 19, 2024, Father was transported from the county jail to testify.

{¶ 10} Father testified that the child's mother died in a house fire on April 17, 2022, when the child was five years old. He acknowledged that the child

lived with his mother at the time of the fire. Father also acknowledged that soon after the child came to live with Father, his house caught fire too. Father testified that he was sober approximately one year but had relapsed twice. He indicated at the time of his testimony that he had been sober for approximately 30 days. Father testified that he is struggling with addiction and life. He testified that he loves his son "with all [his] heart" and did not want to be taken "out of the picture." (Tr. 63.)

{¶ 11} The guardian ad litem ("GAL") recommended that the motion for permanent custody be granted and the child remain with the foster parents who wanted to adopt him. The juvenile court granted the motion for permanent custody to the agency pursuant to R.C. 2151.414(B)(1) and terminated Father's parental rights. Father appeals, raising the following assignments of error for review:

> **Assignment of Error I:** The judgment of the trial court terminating Father R.S. of his parental rights and awarding permanent custody to the State was made with insufficient evidence and against the manifest weight of the evidence.
>
> **Assignment of Error II:** The trial court abused its discretion in its evidentiary rulings.

## II. Law and Analysis

{¶ 12} Initially, we recognize that the right to raise one's own child is "an 'essential' and 'basic civil right.'" *In re Murray*, 52 Ohio St.3d 155, 156 (1990), quoting *Stanley v. Illinois*, 405 U.S. 645 (1972); *In re B.B.C.*, 2024-Ohio-588, ¶ 14, (8th Dist.). "Parents have a 'fundamental liberty interest' in the care, custody, and management of the child." *Id.*, quoting *Santosky v. Kramer*, 455 U.S. 745, 753 (1982). This right, however, is not absolute. "'The natural rights of a parent are not

absolute, but are always subject to the ultimate welfare of the child, which is the polestar or controlling principle to be observed.'" *In re Cunningham*, 59 Ohio St.2d 100, 106 (1979), quoting *In re R.J.C.*, 300 So.2d 54, 58 (Fla. App. 1974).

{¶ 13} In Father's first assignment of error, he asserts that the trial court's decision to terminate his parental rights and award permanent custody to the agency is not supported by sufficient evidence and is against the manifest weight of the evidence. We note that while "sufficiency and manifest weight are distinct legal concepts, a finding that a judgment is supported by the manifest weight of the evidence necessarily includes a finding that sufficient evidence supports the judgment." *In re R.M.*, 2024-Ohio-1885, ¶ 46 (8th Dist.), citing *In re P.S.*, 2023-Ohio-144, ¶ 30 (8th Dist.), citing *In re C.N.*, 2015-Ohio-2546, ¶ 9 (10th Dist.), citing *State v. Howze*, 2013-Ohio-4800, ¶ 10 (10th Dist.). Therefore, we will review this matter under the manifest-weight-of-the-evidence standard.

{¶ 14} In the case of *In re Z.C.*, 2023-Ohio-4703, the Supreme Court of Ohio reexplained the manifest-weight-of-the-evidence standard stating that

> [w]hen reviewing for manifest weight, the appellate court must weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether, in resolving conflicts in the evidence, the finder of fact clearly lost its way and created such a manifest miscarriage of justice that the judgment must be reversed and a new trial ordered. [*Eastley v. Volkman,* 2012-Ohio-2179, ¶ 20]. "In weighing the evidence, the court of appeals must always be mindful of the presumption in favor of the finder of fact." *Id*. at ¶ 21. "The underlying rationale of giving deference to the findings of the trial court rests with the knowledge that the trial judge is best able to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony." *Seasons Coal Co., Inc. v. Cleveland*, 10 Ohio St.3d 77, 80,

10 Ohio B. 408, 461 N.E.2d 1273 (1984). "'If the evidence is susceptible of more than one construction, the reviewing court is bound to give it that interpretation which is consistent with the verdict and judgment, most favorable to sustaining the verdict and judgment.'" *Id.* at fn. 3, quoting 5 Ohio Jurisprudence 3d, Appellate Review, Section 603, at 191-192 (1978).

*Id.* at ¶ 14.

## Permanent Custody – R.C. 2151.414(B)(1)

{¶ 15} R.C. 2151.414(B)(1) sets forth a two-pronged analysis for juvenile courts to apply when determining whether to grant a motion for permanent custody. Permanent custody may be granted to the agency if the trial court determines, by clear and convincing evidence, that (1) any one of the five factors set forth in R.C. 2151.414(B)(1)(a)-(e) exists, and (2) permanent custody is in the best interest of the child after considering the factors set forth in R.C. 2151.414(D)(1). "'Clear and convincing evidence is that measure or degree of proof which is more than a mere "preponderance of the evidence," but not to the extent of such certainty as is required "beyond a reasonable doubt" in criminal cases, and which will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established.'" *In re Z.C.* at ¶ 7, quoting *Cross v. Ledford*, 161 Ohio St. 469 (1954), paragraph three of the syllabus.

{¶ 16} In the instant case, the trial court found, by clear and convincing evidence, that the child was not abandoned or orphaned but "cannot be placed with either of the child's parents within a reasonable time or should not be placed with

the child's parents" citing R.C. 2151.414(B)(1)(a). This finding satisfied the first prong of the permanent-custody statute.

{¶ 17} Because the trial court made the finding under subsection (a), we turn to R.C. 2151.414(E), which requires that the trial court enter this finding, if the court determines, by clear and convincing evidence, that one or more of the (E)(1)-(16) factors exist. Here, the trial court determined that at least two of the factors set forth in R.C. 2151.414(E) applied, specifically:

> (1) Following the placement of the child outside the child's home and notwithstanding reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that initially caused the child to be placed outside the home, the parent has failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the child's home. [and]

> (4) The parent has demonstrated a lack of commitment toward the child by failing to regularly support, visit, or communicate with the child when able to do so, or by other actions showing an unwillingness to provide an adequate permanent home for the child[.]

{¶ 18} Father disagrees with these findings. He contends that he did remedy the conditions that caused the child to be removed and that the agency failed to make reasonable efforts to engage him in services and visitation. He asserts that he has been sober for nearly a year with only one relapse that lasted a few days. Father also argues that he only missed visits with the child when he was in jail.

{¶ 19} Contrary to Father's assertions, the record supports the trial court's finding that Father failed to remedy the problems that caused the child to be removed. The child was removed because of Father's substance abuse problems and numerous unresolved criminal cases. At the time of trial, Father was still struggling

to remain sober and was charged with two additional criminal cases that arose out of his addiction. In fact, Father missed a trial date because he was in custody and had to be transported from the county jail to testify. Although Father is commended for his efforts to remain sober and completing most of his case plan, under R.C. 2151.414(E)(1), the issue is not whether Father substantially complied with the case plan, but whether Father remedied the conditions that caused the child's removal. *In re J.B.*, 2013-Ohio-1704, ¶ 90 (8th Dist.). Father clearly did not.

{¶ 20} Father also argues that he was not provided with services to help with his substance-abuse issues. This assertion is not accurate. Grace testified that referrals were made but never completed until Father served his time at Lake County. Thereafter, he completed inpatient treatment because it was court ordered. He then transitioned into sober living and was monitored by the probation department and the agency. When Grace recognized that Father may have relapsed, he immediately offered services to Father and notified his probation officer. Again, despite Father's contentions, the agency provided services to address Father's substance-abuse issues.

{¶ 21} With regard to Father's complaint that the agency did not increase visitation or allow unsupervised visits, unfortunately, the record indicates that this was not possible because the child was uncomfortable visiting Father unless Grace was present. The GAL's report and Grace's testimony support the agency's decision to maintain supervised visitation.

{¶ 22} Nevertheless, Father contends that the agency should have done more to help reunite the family; however, "[t]he issue in a reasonable-efforts determination is not whether the agency could have done more, but whether the agency's case planning and efforts were reasonable and diligent under the circumstances of the case." *In re A.F.*, 2021-Ohio-4519, ¶ 35 (8th Dist.), citing *In re D.H.*, 2021-Ohio-3984, ¶ 58 (5th Dist.). Here, the juvenile court made a reasonable-efforts finding, stating that

> [t]he Court further finds that reasonable efforts were made to prevent the removal of the child from the home, or to return the child to the home and finalize a permanency plan, to wit: reunification. Relevant services provided to the family: Services for [Father] included domestic violence and substance abuse. Services for the child included trauma therapy and ongoing individual therapy. Mother is deceased.

We find that the trial court's findings are consistent with the record and supported by the evidence presented at trial. We further find that there is clear and convincing evidence to support the trial court's conclusion that Father failed to remedy the situation that caused the child's removal.

{¶ 23} Finally, Father's contention that he did not show a lack of commitment to the child because he only missed visits with the child when he was in jail, does not support his argument. Father chose to commit the crimes that landed him in jail and unable to visit the child. His actions continue to demonstrate a lack of commitment towards the child. Therefore, the trial court's finding under R.C. 2151.414(E)(4) was also supported by clear and convincing evidence in the record.

{¶ 24} We note that the trial court is only required to find one of the R.C. 2151.414(E) factors present in order to enter a finding that a child cannot or should be placed with a parent. *In re D.H.*, 2022-Ohio-2780, ¶ 29 (8th Dist.), citing *In re L.W.*, 2019-Ohio-1343 (8th Dist.). In this case the trial court found two factors were present. Consequently, the trial court was required, pursuant to R.C. 2151.414(E), to make the finding that the child "cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents" under R.C. 2151.414(B)(1)(a).

{¶ 25} Having determined that the trial court properly found that the child "cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents," we turn to Father's arguments that it was not in the best interest of child to grant permanent custody to the agency pursuant to R.C. 2151.414(D)(1).

## Best-Interest Determination — R.C. 2151.414(D)(1)

{¶ 26} R.C. 2151.414(D)(1) requires that the juvenile court consider all relevant factors in determining whether the children's best interests would be served by granting the permanent custody motion. These factors include (a) the interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers, and out-of-home providers; (b) the child's wishes, as expressed directly by the child or through the child's GAL; (c) the child's custodial history; (d) the child's need for a legally secured permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency; and

(e) whether any of the factors set forth in R.C. 2151.414(E)(7)-(11) apply. R.C. 2151.414(D)(1). The statute, however, does not require a juvenile court to expressly discuss each of the best-interest factors when making its determination. *In re A.M.*, 2020-Ohio-5102, ¶ 31.

{¶ 27} Father contends that the trial court clearly lost its way when it found that it was in the best interest of the child to grant permanent custody to the agency. He asserts that he "is ready[,] willing, and able to take care of his child." (Father's brief, p. 12.) Father again asserts that the agency did not make reasonable efforts to reunite the family or provide him with resources "to cure his addiction." (Father's brief, p. 13.)

{¶ 28} Contrary to Father's assertions, the best-interest determination focuses on the best interests of the child, not the parent. *In re N.B.*, 2015-Ohio-314, ¶ 59 (8th Dist.). And when making that determination, a juvenile court must consider each of the R.C. 2151.414(D)(1) factors, but no one factor is given greater weight than the others. *In re Schaefer*, 2006-Ohio-5513, ¶ 56. Furthermore, only one of the factors set forth in R.C. 2151.414(D)(1) needs to be resolved in favor of permanent custody. *In re D.H.*, 2022-Ohio-2780, at ¶ 46 (8th Dist.), citing *In re G.W.*, 2019-Ohio-1533, ¶ 72 (8th Dist.). Here, the record reflects multiple factors that weigh in favor of granting permanent custody to the agency. Specifically, the child was doing well in his foster home and in counseling, whereas he was afraid to be alone with Father. In addition, the child expressed, to both his GAL and Grace, his desire to remain with his foster family. Further, at the time of trial, the child had

been with his foster family for nearly 20 months and was in need of a stable and legally secured permanent placement.

{¶ 29} Based on the foregoing, we find that there was clear and convincing evidence from which a trier of fact could have determined that permanent custody was in the best interest of the child. The trial court considered the best interest findings listed in R.C. 2151.414(D)(1), and its decision to grant permanent custody to the agency is not against the manifest weight of the evidence.

{¶ 30} We note that in Father's brief he cites an exhaustive list of cases from various jurisdictions arguing, in essence, that he is not as bad as other parents who either were awarded custody or lost custody of their children.[1] The agency points out that "[Father] fails to tie the rationale of those cases to the actual facts presented in this matter." (The agency's brief, p. 22.) We note that the burden of demonstrating error on appeal falls on Father, and this court will not root out arguments to support his contentions. *See* App.R. 12(A)(2). Nevertheless, we have reviewed each case and find that the facts in this case are distinguishable, and our decision is not inconsistent with the decisions cited by Father. We stress that "[t]he statutory factors that a juvenile court is required to consider when making an award of permanent custody are not exclusive and the combination of factors supporting

---

[1] *In re A.L.*, 2024-Ohio-1992 (8th Dist.); *In re B.B.C.*, 2024-Ohio-588 (8th Dist.); *In re Willis*, 2002-Ohio-4942 (3d Dist.); *In re Fry*, 2002-Ohio-3935 (3d Dist.); *In re J.G.*, 2020-Ohio-4304 (8th Dist.); *In re G.C.M.G.*, 2023-Ohio-3018 (11th Dist.); *In re E.-J.*, 2019-Ohio-1519 (1st Dist.); *In re E.T.*, 2006-Ohio-2413 (9th Dist.).

the permanent custody decision is unique to each case." *In re N.J.*, 2023-Ohio-3190, ¶ 48 (6th Dist.).

{¶ 31} Accordingly, Father's first assignment of error is overruled.

## Evidentiary Ruling

{¶ 32} In Father's second assignment of error, he argues that the trial court committed error by denying Father's counsel the right to review the police report Officer Lee used to refresh his recollection. He asserts that he was prejudiced by this ruling. We disagree.

{¶ 33} Although Evid.R. 612 states that if a writing is used to refresh the memory of the testifying witness, "[t]he adverse party is also entitled to inspect it, to cross-examine the witness thereon, and to introduce in evidence those portions which relate to the testimony of the witness," we cannot say that Father was prejudiced by the court's ruling.

{¶ 34} At trial, Officer Lee was permitted to review his report to refresh his recollection regarding the exact date that he arrested Father. Father's request to see the report was denied; however, he did not object to its use. Moreover, Father did not cross-examine Officer Lee, nor did Father contest Officer Lee's statements about his arrest when Father testified on his own behalf. In light of the foregoing, we cannot say that Father was prejudiced by the trial court's erroneous ruling.

{¶ 35} Accordingly, Father's second assignment of error is overruled.

{¶ 36} Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court, juvenile division, to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.


_____
MARY J. BOYLE, JUDGE

EILEEN T. GALLAGHER, P.J., and
DEENA R. CALABRESE, J., CONCUR